**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.: 1:22-cv-20552-ALTONAGA/Torres

**JAMES THOMPSON, III, individually
and on behalf of all others
similarly situated,**

  **Plaintiff,**

v.

**RYDER SYSTEM, INC.,**

  **Defendant.**
_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND SUPPORTING MEMORANDUM OF LAW**

  The Class Representative, James Thompson, III ("Plaintiff" or "Named Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.  On March 16, 2022, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 41.)  In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 3, ¶ 10).

  Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members.  Importantly, <u>class members made zero objections</u>.  (*See* attached Declaration of Mark Unkefer from Settlement Administrator, American Legal Claim Services, LLC, ¶¶ 8-9) (hereinafter "Unkefer Decl."). Not only that, only five requests for exclusion were made.  (*Id.*).  Considering the large size of the Class, coupled with the fact this is a "claims paid" settlement (meaning all class members will automatically

receive a check without having to file claims), and no funds revert to Defendant (instead they will be paid to a *cy pres* recipient), the Settlement is an excellent outcome.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for Preliminary Approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiff states as follows:

### I. BACKGROUND AND OVERVIEW OF MOTION.

#### A. Allegations Included in Named Plaintiff's Complaint.

This is a putative class action brought by Named Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges that Defendant provided Named Plaintiff and the Settlement Class Members with a deficient COBRA election notice ("COBRA Notice"). More specifically, Named Plaintiff asserts that Defendant's COBRA Notice did not adequately inform him how to exercise his rights to elect COBRA coverage because the COBRA Notice allegedly: (i) failed to include an address indicating where COBRA payments should be mailed; (ii) failed to include a physical election form; and (iii) failed to identify the plan administrator. As a result of the alleged violations in the Complaint, Named Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, and costs, on behalf of himself and a putative class of all others similarly-situated during the applicable statutory period. The action was brought on behalf of all participants and beneficiaries in the Plan who, in the four years preceding the filing of the Complaint, received the COBRA Notice because of a qualifying event and who did not elect COBRA coverage.

#### B. Defendant's Defenses.

Had mediation been unsuccessful, Defendant had available to it myriad defenses to Named Plaintiff's allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Named Plaintiff and/or any Settlement Class Member. In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever. The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the potential for disruption to its business operations.

**C.** **Procedural History of Case.**

Plaintiff filed suit against Defendant on February 24, 2022 (Doc. 1), and an Amended Complaint on June 6, 2022. (Doc. 17). On June 27, 2022, Defendant filed its Motion Dismiss the First Amended Complaint. (Doc. 20). That Motion was denied, in part, on October 11, 2022. (Doc. 29). In the interim, on August 30, 2022, Defendant filed a Motion to Stay Discovery. (Doc. 25). That Motion was later denied by the Court on September 7, 2022. (Doc. 28).

Plaintiff served requests for production, interrogatories, and a Fed.R.Civ.P. 30(b)(6) notice on Defendant on August 11, 2022. Additionally, Plaintiff sought and ultimately obtained written

discovery, including a sworn declaration, from Defendant's COBRA Administrator, Alight Solutions. Defendant responded to Plaintiff's written discovery on October 4, 2022.

Defendant filed its Answer and Affirmative Defenses on October 25, 2022. (Doc. 30). Soon thereafter, after Plaintiff's extensive discovery efforts, counsel for both sides agreed to ask the Court to stay this case pending completion of a class wide mediation. The Court granted the Parties' Joint Motion to Stay this case on November 8, 2022. (Doc. 32). The Parties then scheduled a Zoom mediation with Hunter Hughes.

### D.   Settlement Negotiations and Mediation.

On January 23, 2023, the Parties participated in mediation with mediator Hunter Hughes, one of the country's most respected class action mediators. Soon after mediation concluded, the Parties reached an agreement in principle to resolve this matter on a class-wide basis. As a result of the agreement reached at mediation, the Parties agreed to enter into the Agreement, for which they now seek Court approval.

## II.   THE PROPOSED SETTLEMENT.

### A.   The Proposed Settlement Class.

The class includes 23,340 individuals who meet the following proposed Settlement Class definition: "All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the same or substantially similar form sent to Plaintiff, from February 24, 2018 to February 24, 2022, as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage."

### B.   Benefits to the Settlement Class and Named Plaintiff.

The Agreement, if granted final approval, will resolve all claims of Named Plaintiff and all Settlement Class Members in exchange for Defendant's agreement to pay $390,000 into the

Settlement Account. This represents a gross recovery of approximately $16.80 per Settlement Class member and a net recovery of approximately $7.50 to $10.00. This recovery falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Johnson v. McDonald's Corp.*, 1:21-cv-24339-FAM (S.D. Fla. Feb. 14, 2023)(ECF. No. 50) ($7.00 to $10.00 net payment to class members approved in COBRA class settlement recently granted final approval by Judge Moreno); *Baja v. Costco*, 0:21-cv-61210-AHS (S.D. Fla. Oct. 25, 2022)(ECF. No. 56)($10.00 net payment approved in COBRA class settlement recently granted final approval by Judge Singhal).

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, a general release payment of $7,500 to the Named Plaintiff, as well as litigation costs, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately Settlement Class Members equally on a *pro rata* basis. No funds revert to Defendant. Any funds that are unclaimed (which shall only arise if/when a check is mailed but then not timely cashed) shall revert to a mutually agreeable *cy pres* recipient. The Parties have selected Legal Services of Greater Miami, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the *cy pres* recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the Parties' settlement offers were inclusive of all attorneys' fees and costs, and administrative expenses. The Parties did not negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition.

C. **Administration of Notice of Settlement.**

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC ("ALCS"), to administer the Settlement in this case, including but not limited to

5

distribution of the Notice of Settlement.  The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Account.

If the Court grants final approval of the settlement, Defendant will transfer designated amounts to the Settlement Account within twenty-one (21) days of the effective date of the Agreement, as defined in the Agreement. Settlement checks will be mailed to all Settlement Class Members within fifteen (15) days after receipt by the Settlement Administrator of the Settlement Account monies. To the extent any money remains in the Settlement Account after these distributions and after Settlement Class Members have had one-hundred eighty (180) days to cash their settlement checks, such monies shall be transferred to the *cy pres* recipient identified above.

The Notice of Settlement in this case is modeled after notices to class members approved by other federal courts in cases involving deficient COBRA notices, including in *Rigney, et al. v. Target Corp.*, No. 8:19-cv-01432-MSS-JSS (M.D. Fla. July 14, 2020), ECF No. 49-4 and 49-4, 52; *see also Vazquez v. Marriott International, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020) ECF No. 127.  For these reasons, the Notice of Settlement should be approved.

**D.** **Attorneys' Fees and Costs.**

Pursuant to the Agreement, Class Counsel is authorized to petition the Court for up to one-third of the Gross Settlement amount for attorneys' fees, plus costs.  Defendant does not oppose the amount of fees and costs sought by Class Counsel, as specified above.  Neither Settlement approval nor the size of the Gross Settlement amount are contingent upon Court approval of the full amount of Class Counsel's requested fees and costs.

**E.** **Class Action Fairness Act Notice.**

The settlement administrator submitted the notices required by the Class Action Fairness Act of 2005 ("CAFA") to the appropriate Federal and State officials.

**F.      The General Release Payment.**

Additionally, Named Plaintiff, James Thompson, III, is entitled to apply to the Court for a General Release Payment not to exceed $7,500. Named Plaintiffs acknowledge that in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), the Eleventh Circuit held that incentive awards for class action representatives that provide compensation for their time and reward them for bringing lawsuits are prohibited. However, the general release payments do not constitute a prohibited incentive award because the general release payments are made in consideration for Mr. Thompson's release of all claims he individually could have or did assert in the action, including claims under federal law, state or local laws, statutes, regulations, ordinances, or federal or state common law. Defendant does not oppose Named Plaintiff's General Release Payment application. Neither Settlement approval nor the size of the Gross Settlement amount are contingent upon Court approval of the full amount of Class Counsel's requested fees and costs, nor approval of Named Plaintiffs' General Release Payments.[1]

In *Baja v. Costco*, S.D. Fla. Case No.: 0:21-cv-61210-AHS (Dec. 9, 2021)(Doc. 56), Judge Raag Singhal from the Southern District of Florida ordered supplemental briefing on whether a general release payment was permissible in light of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020).   Ultimately, Judge Singhal approved the general release and held as follows:

> The Court finds the general release payment does not constitute a prohibited incentive award as described in Johnson v. NPAS Sols., LLC, 975 F.3d 1244 (11th

---

[1] General releases that are supported by independent consideration are routinely approved in employment law settlements, including specifically in class action settlement approved after the Johnson was issued. *See, e.g., Twardosky v. Waste Management, Inc.*, Case No. 8:19-cv-02467-CEH-TGW (M.D. Fla. June 28, 2021, ECF No. 58); *Candiss Tweedie v. Waste Pro of Fla., Inc*., Case No. 8:19-cv-01827, (M.D. Fla. August 5, 2021) (Adopting May 4, 2021 Report and Recommendation, (ECF No. 57), in a Fair Credit Reporting Act class action settlement, which provides for a $7,500 incentive award to the named plaintiff in exchange for a general release.); *McNamara v. Brenntag Mid-South, Inc*., Case 8:21-cv-00618 (M.D. Fla. Feb. 17, 2022(Doc. 32)(approving $5,000 general release payment to class representative in class action case.)

Cir. 2020). The general release payment was made in consideration for Baja's release of any and all claims he individually could have or did assert in the action, including claims under federal law, state or local laws, statutes, regulations, ordinances, or federal or state common law. See (DE [41-2], at 12–14). Thus, the general release payment cannot reasonably be characterized as an impermissible "salary," "bounty," or payment given to a class representative "simply by reason of his status." See Johnson, 975 F.3d at 1259 n.9 (citations omitted). Johnson specifically dealt with an explicit "incentive payment" awarded in "acknowledgement of [the class representative's] role in prosecuting the case on behalf of the class members." Id. at 1248. That is nothing like the case here.

Thus, in accordance with Judge Singhal's decision in Baja v. Costs, this Honorable Court should approve the general release payment under the Parties' agreement to Mr. Thomson.

**G.    The Court's Order granting Preliminary Approval of the Settlement.**

On March 16, 2022, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 41.) Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the approximately 23,340 Settlement Class Members.

**H.    The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on April 14, 2023, via first-class U.S. mail. A total of 23,340 Class Notices were mailed to members of the Settlement Class. (*See* Declaration of Mark Unkefer from ALCS, ¶ 5) (hereinafter "Unkefer Decl."). Thus, the Settlement Class Members overwhelmingly accepted the Settlement. According to the Settlement Administrator, 99.03% of the notices were deemed delivered. (Unkefer Decl. ¶ 7.) No Class Members have objected to the settlement thus far. (Unkefer Decl. ¶ 9.) Additionally, to date only five class members filed for exclusion. (Unkefer Decl. ¶ 8.)

### III. THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

**A.      The Class Has Already Been Certified on a Preliminary Basis.**

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 42). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

**B.      Notice to the Class under Fed.R.Civ.P. 23(e)(1).**

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by sending out the Court-approved short form version of the notice to all class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all other required information. Thus, notice was sufficient.

**C.      Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief

9

provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that the Named Plaintiff, Ashley Johnson, and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, James Thompson, III, is adequate given that his interests are equivalent to those of the Settlement Class. He was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in discovery, participating in settlement discussions, and attending the Zoom mediation. He, along with his counsel, secured a six-figure settlement from a highly sophisticated Defendant in favor of the class members she represents.

Plaintiff's Counsel and prior experience is detailed in the Declarations attached to the Motion for Preliminary Approval (*see* Doc. 40-5 (Cabassa Decl.), Doc. 40-6 (Hill Decl.), Doc. 40-7 (Heystek Decl.), Doc. 40-8 (Justice Decl.), and those declarations attached hereto. This case has, at all stages, been handled on both sides by very experienced lawyers whose reputations for effective handling of complex litigation are known throughout Florida, and the country. This factor also weighs in favor of awarding the Requested Fee.

Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including *Baja v. Costco Wholesale Corp.* 0:21-cv-61210-AHS (S.D. Fla. Dec. 20, 2022)(Doc. 56); *see also Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, but the Parties also used a highly respected mediator in this case, Hunter Hughes, one of

the most respected class action mediators in Florida. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to the Class Members.

The Agreement, if granted final approval, will resolve all claims of Named Plaintiff and all Settlement Class Members in exchange for Defendant's agreement to pay $390,000 into the Settlement Account. This represents a gross recovery of approximately $16.80 per Settlement Class member and a net recovery of approximately $7.50 to $10.00. This recovery falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Johnson v. McDonald's Corp.*, 1:21-cv-24339-FAM (S.D. Fla. Feb. 14, 2023)(ECF. No. 50) ($7.00 to $10.00 net payment to class members approved in COBRA class settlement recently granted final approval by Judge Moreno);

*Baja v. Costco*, 0:21-cv-61210-AHS (S.D. Fla. Oct. 25, 2022)(ECF. No. 56)($10.00 net payment approved in COBRA class settlement recently granted final approval by Judge Singhal).

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, any approved general release payment, and litigation costs, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately Settlement Class Members equally on a *pro rata* basis. No funds revert to Defendant. Any funds that are unclaimed (which shall only arise if/when a check is mailed but then not timely cashed) shall revert to a mutually agreeable *cy pres* recipient. The Parties have selected Legal Services of Greater Miami, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the *cy pres* recipient. All Settlement Class members who do not opt out will share in the recovery, as they do not need to file a claim form to receive a settlement payment.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Because this case settled not long after filing, Named Plaintiff had yet to survive class certification, summary judgment, and trial. Each of these phases of litigation presented serious risks, which the settlement allows the Named Plaintiff and the Settlement Class Members to avoid. *See, e.g. In re Painewebber Ltd. P'ships* Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty.").

The Gross Settlement amount in this Settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Account, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the amounts it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms.

**4. The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. Moreover, this a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient.

If Plaintiff had chosen to continue to litigate her claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott*

14

*v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all.  Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay.  Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

### D.   The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed the settlement agreement for which they seek final approval. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## V.    LOCAL RULE 7.1(A)(3) CERTIFICATE.

The undersigned certifies that Plaintiff's counsel has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the Motion. Defendant does not oppose the relief sought in this Motion.

DATED this 6th day of June, 2023.

                        Respectfully submitted,

                        */s/Brandon J. Hill*

**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of June, 2023, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> */s/Brandon J. Hill*
> **BRANDON J. HILL**